UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN HENSEL, )<br>    *Plaintiff,* )<br>)<br>VS. )<br>)<br>WBTS TELEVISION, LLC; )<br>NBC UNIVERSAL MEDIA, LLC; and )<br>BEN DOBSON, Individually & as Former )<br>News Director of WBTS TELEVISION, LLC, )<br>    *Defendants.* ) | C.A. No. _____ |

## COMPLAINT AND JURY DEMAND

### Parties

1. Plaintiff, Karen Hensel, resides at 6039 Collins Avenue #1216, Miami Beach, FL 33140.

2. Defendant, WBTS Television, LLC ("WBTS"), is a limited liability company organized under the laws of Delaware with a principal office at 30 Rockefeller Plaza, New York, NY 10112. WBTS operates a television station known as NBC10-Boston at 189 B Street, Needham Heights, MA 02494.

3. Defendant, NBCUniversal Media, LLC ("NBCU"), owns and operates the WBTS television station known as NBC10-Boston. NBCU is a limited liability company organized under the laws of Delaware with a principal office at 30 Rockefeller Plaza, New York, NY 10112, and a Massachusetts office at 189 B Street, Needham Heights, MA 02494. NBCU also owns and operates New England Cable News ("NECN"), a regional 24-hour cable news network, with offices at 189 B Street, Needham Heights, MA 02494.

4. Defendant, Ben Dobson, was formerly employed as the News Director for the television station known as NBC10-Boston at 189 B Street, Needham Heights, MA 02494. Mr. Dobson is named in both his individual and official capacities.

### Jurisdiction

5. This action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), among other remedies. This Court has original jurisdiction over all civil actions arising under the laws of the United States. 28 U.S.C. § 1331.

6. This Court has personal over all defendants as they do business in the Commonwealth of Massachusetts and the acts complained of herein occurred in Massachusetts.

### Facts

7. Plaintiff is an award-winning journalist with over three decades of experience. In 2016, plaintiff moved from Indiana to Boston to join the launch of NBC10-Boston and NECN as an investigative reporter.

8. Plaintiff has received numerous awards and commendations during her career as a journalist. Specifically, plaintiff has received (among others) two Peabody awards, eleven Emmy awards, the first Robert Wood Johnson Medical Peabody, a national Emmy nomination, a national RTNDA Edward R. Murrow award, several regional Edward R. Murrow awards, six Gracies, and dozens of Associated Press awards. As a journalist, plaintiff traveled to Iraq to report on traumatic brain injuries suffered by U.S. Marines from roadside bombings.

9. In March 2016, plaintiff entered into her first employment agreement with defendants (the "2016 employment agreement.") The three-year agreement commenced on July 6, 2016, and was divided into three (3) cycles of fifty-two (52) weeks each, running through July 2, 2019.

10. Pursuant to the 2016 employment agreement, plaintiff agreed to provide services for any NBCU-owned television station, or any entity affiliated with and/or under the common control of NBCU.

11. In January 2017, NBCU launched its own outlet local news channel WBTS, known as NBC10-Boston.

12. At the time of the launch of NBC10-Boston, plaintiff began working for defendants and the WBTS television station and continued to do so until her termination.

13. During her employment at NBC10-Boston, plaintiff was continuously subjected to a pattern and practice of ongoing harassment, gender discrimination and retaliation. During her employment at NBC10-Boston, plaintiff was continuously and repeatedly subjected to a sexually-hostile work environment.

14. The sexually-hostile work environment at NBC10-Boston was primarily perpetuated by Jane Doe, another female investigative reporter and co-worker employed by defendants. Ms. Doe's conduct and actions were designed and intended to interfere with plaintiff's work performance and career success in an effort to make Ms. Doe stand out as the leading female investigative reporter at the station.

15. In or around May 2017, plaintiff complained to her supervising producer regarding Ms. Doe's conduct and the sexually-hostile work environment at NBC10-Boston. The producer advised plaintiff to "deal with [Ms. Doe] the best you can. You know how she is." Defendants did not investigate plaintiff's complaint regarding Ms. Doe's conduct and/or the sexually-hostile work environment.

16. As early as 2017, station management at NBC10-Boston and plaintiff's supervisors expressly recognized Ms. Doe's sexually harassing behavior toward plaintiff and others when her manager wrote in Ms. Doe's performance appraisal: "Team dynamics can often be a challenge. A big focus of the new year for the unit should be to build relationships."

17. Plaintiff's 2017 and 2018 performance evaluations were both overwhelmingly positive. In her 2017 employee evaluation, plaintiff's manager wrote: "Karen has been a driving force in getting the Investigators' unit off the ground. Her story-telling technique has really set a nice tone for the unit."

18. In December 2018, plaintiff's investigative reporting led her to break an exclusive story regarding the first interview with the whistleblower for the Columbia Gas explosion that occurred in the Merrimack Valley in September 2018, destroying dozens of homes and businesses and leaving thousands of Colonial Gas customers without utilities.

19. In or around January 2019, defendants promoted Matthew Glasser to Executive Producer of the NBC10-Boston Investigative Unit.

20. In May 2019, Mr. Glasser met with plaintiff to discuss the Investigative Unit's operations, including plaintiff's attendance at an upcoming investigative reporters' convention. During her meeting with Mr. Glasser, plaintiff again complained about Ms. Doe's harassing conduct directed toward her and the ongoing sexually-hostile work environment at NBC10-Boston.

21. Mr. Glasser expressly acknowledged his awareness of Ms. Doe's misconduct but declined to take any corrective measures and/or address same either directly or indirectly. Defendants did not investigate plaintiff's complaints.

22. Instead, Mr. Glasser held individual meetings with members of the Investigative Unit's staff to explain why he changed who would attend the investigative reporters' convention in anticipation of a negative reaction from Ms. Doe, rather than address Ms. Doe's continuing conduct and sexually-harassing behavior.

23. Despite complaining to her supervisor again regarding Ms. Doe's conduct and sexually-harassing behavior, plaintiff's exposure to a hostile work environment continued when Ms. Doe humiliated plaintiff to the point of tears in front of co-workers in the newsroom. This incident occurred after plaintiff offered to assist Ms. Doe with logging an interview. Ms. Doe, in turn, was critical and demeaning toward plaintiff to and before other employees.

24. Despite both witnessing and being informed of Ms. Doe's inappropriate conduct toward plaintiff (and other female colleagues), neither defendants nor NBC10-Boston station management took any action to investigate or address such misconduct or the hostile work environment to which plaintiff was being subjected.

25. Prior to the expiration of the 2016 employment agreement in July 2019, plaintiff complained to Mr. Glasser once again regarding her concerns with Ms. Doe's continued

harassing and demeaning behavior. Plaintiff advised Mr. Glasser (prior to renewing her employment agreement) that, because of Ms. Doe, her workplace remained a toxic and hostile work environment. Mr. Glasser responded he "would work on it" but, to plaintiff's knowledge, did nothing. Again, defendants did not investigate plaintiff's complaints of harassment or demeaning behavior.

26. In reliance upon Mr. Glasser's promises and representations that defendants would take steps to address the hostile work environment at NBC10-Boston, plaintiff agreed to renew her employment agreement.

27. On July 16, 2019, plaintiff executed a second three-year employment agreement with defendants (the "2019 employment agreement.") Defendant, Ben Dobson, Vice President, News, signed the agreement on behalf of WBTS as operator of NBC10-Boston. The 2019 employment agreement commenced on July 3, 2019 and was also divided into three (3) cycles of fifty-two (52) weeks each, running through July 8, 2022.

28. In or around February 2019, Ms. Doe informed Investigative Unit producer, Doug Moser (while the two of them were working together on an assignment), that plaintiff was dating a local Police Chief. Mr. Moser did not know why Ms. Doe shared this information with him, but was aware Ms. Doe did not like plaintiff

29. Upon his return to the television station, Mr. Moser disclosed to plaintiff's supervisor, Mr. Glasser, the information Ms. Doe had shared with him – *i.e.*, that plaintiff was dating a local Police Chief.

30. By February 2019, defendants and at least three members of NBC10-Boston station management were aware of plaintiff's relationship with a local Police Chief.

31. Plaintiff did not and has never denied that she was dating a local Police Chief.

32. From February 2019 through defendants' offer of a second three-year employment agreement to plaintiff in July 2019, defendants and NBC10-Boston station management raised no issues or concerns whatsoever regarding plaintiff's personal relationship with a local Police Chief.

33. Like station management, at no time did plaintiff perceive or understand that her personal relationship with a local Police Chief posed a potential conflict of interest, required formal disclosure to her employer, and/or potentially violated any company or NBC rules or policies. From February to July 2019, neither Mr. Glasser nor anyone at station management advised plaintiff that her personal relationship with a local Police Chief posed a potential conflict of interest, required formal disclosure to her employer, and/or potentially violated any company or NBC rules or policies.

34. Despite being aware of her personal relationship with a local Police Chief since February 2019, Mr. Glasser did not raise with plaintiff any issue or concern regarding such relationship at any time prior to discussing her employment agreement renewal.

35. On or about November 8, 2019 (nine months after NBC10-Boston station management first became aware of plaintiff's personal relationship with a local Police Chief), Mr. Dobson met with plaintiff and informed her that he had received an anonymous complaint through an NBCU internal website to the effect that plaintiff was dating a local Police Chief.

36. At the time he informed her of the anonymous complaint, Mr. Dobson explained to plaintiff that the "problem" (*i.e.*, the anonymous complaint) was likely prompted by the company's issuance of a new seating chart in October 2019, when the station moved to a new building. It was well-known that Ms. Doe was displeased with the new seating chart. Mr. Dobson also warned plaintiff: "You have to be careful because there are sharks in the water … I have them coming after me too."

37. During the November 8, 2019 meeting, Mr. Dobson advised plaintiff (for the first time) that she should disclose the relationship to her employer, even though her employer was already aware of it. Mr. Dobson offered to show plaintiff how to complete the correct disclosure form on the NBCU company website.

38. Plaintiff explained that she did not believe her personal relationship with a local Police Chief posed a potential conflict of interest or required formal disclosure, but nonetheless agreed to complete the disclosure form as Mr. Dobson suggested. As suggested by Mr. Dobson, plaintiff completed an on-line disclosure form on or about November 11, 2019.

39. On November 15, 2019, plaintiff attended a second meeting with Mr. Dobson and a representative from the Human Resources Department. During the meeting, Mr. Dobson asked plaintiff what she would like to do.

40. Plaintiff responded by stating that she had never sought to hide her personal relationship with a local Police Chief from her employer and that she was previously unaware of any duty or responsibility to complete the on-line disclosure form. She further responded that her hope was to remain with NBC10-Boston Investigative Unit.

41. Mr. Dobson responded: "That's very helpful." Mr. Dobson then encouraged plaintiff to continue to maintain her personal relationship with a local Police Chief with the explicit instruction not to "turn off the spigot of information" when it came to tips she may be able to pass along to the NBC10-Boston news desk.

42. Three days later, Mr. Dobson terminated plaintiff by letter dated November 18, 2019. As grounds therefor, he cited plaintiff's alleged "breach of Company policies …," specifically those policies concerning conflicts of interest and outside activities.

43. Defendants maintained that plaintiff breached company policies concerning conflicts of interest and outside activities despite the fact that, in offering plaintiff the 2019 employment agreement and in entering into said agreement, defendants had actual knowledge of plaintiff's personal relationship with a local Police Chief. Indeed, at the time

5

defendants entered into the 2019 employment agreement, defendants had been aware of such relationship for approximately five months.

44. Section 4(c) of the 2019 employment agreement states in part that: "Artist [plaintiff] shall abide by the applicable company policies of Producer [WBTS, operator of NBC10-Boston], including the policies of the Producer News Division (including but not limited to those policies concerning conflicts of interest and outside activities)."

45. Despite defendants' position that plaintiff had violated company policies, including policies regarding potential conflicts of interest, NBC10-Boston still ran plaintiff's news report on the evening of her termination. Following her termination, NBC10-Boston also aired two stories featuring plaintiff's work. In fact, three years later, the NBC10-Boston website continues to include active links to plaintiff's investigative reporting.

46. Plaintiff's personal relationship with a local Police Chief did not violate company policies or pose a potential conflict of interest. Plaintiff's failure to complete an on-line disclosure form prior to November 11, 2019 was not a violation of company policies and/or a violation of the 2019 employment agreement.

47. Shortly after plaintiff's termination, Mr. Dobson advised another NBC10-Boston employee and former co-worker of plaintiff's that plaintiff would not have been terminated had she formally disclosed her personal relationship sooner.

48. Rather than investigate Ms. Doe's conduct and/or take appropriate corrective measures to address the hostile work environment of which plaintiff had repeatedly complained, NBC10-Boston chose to protect Ms. Doe and to terminate plaintiff under the guise of receiving an anonymous tip containing information of which station management had been aware for approximately nine months. Defendants' alleged receipt of an anonymous tip was no more than a pretext for taking an adverse employment action against plaintiff. Defendants' decision to terminate plaintiff was in retaliation for her engaging in protected activity – *i.e.*, complaining to her supervisors and station management about the hostile work environment and harassment she was experiencing.

49. Prior to her termination, plaintiff repeatedly opposed practices prohibited under M.G.L. Chapter 151B and Title VII. In so doing, plaintiff reasonably and in good faith believed she was a victim of unlawful discrimination in the workplace.

50. Despite her unblemished record at NBC10-Boston, defendants subjected plaintiff to disparate treatment through their heavy-handed and pretextual termination of the 2019 employment agreement.

51. Other NBC10-Boston and NBCU employees have failed to disclose personal relationships, whether between co-workers or outside persons/entities that receive news coverage and not been subjected to any progressive discipline, let alone termination.

52. In fact, defendants treated a male employee more favorably despite informing all staff (following plaintiff's unlawful termination) that employees are free to date or marry whomever they wish without violating company policies, provided they disclose their relationship(s) to a manager if a potential conflict of interest may arise.

53. Upon information and belief, a male assistant news director of the NBC10-Boston management team did not disclose that he was involved in a personal relationship with a subordinate NBC10-Boston female on-air journalist until that relationship came to light by way of (1) anonymous complaints to NBC10-Boston and/or NBCU; and (2) a reported confrontation at the station involving the male assistant and the spouse of the on-air journalist.

54. The assistant news director (who directly supervised the on-air journalist) was not terminated from his employment, let alone subjected to progressive discipline, despite (1) defendants' termination of plaintiff; and (2) NBCU's Conflicts of Interest guidelines directing employees to refrain from making "any employment decisions regarding a family member or close personal relationship (including hiring, promoting or directly supervising)."

55. The assistant news director not only failed to disclose his own personal relationship, but also engaged in an actual conflict of interest where he had the ability to influence NBC10-Boston decisions relating to employment that involved a subordinate with whom he was involved in a personal relationship.

56. Instead, after the relationship between the assistant news director and on-air journalist became widely-known within the NBC10-Boston newsroom, station management responded only by re-assigning the assistant's responsibilities for handling the day-to-day scheduling of on-air talent.

57. The assistant news director's other responsibilities included, but were not limited to, managing day-to-day coverage, being involved with all aspects of news content for the station, enforcing newsroom policies and procedures, and providing leadership to news professionals.

58. The assistant news director suffered no adverse employment action for maintaining a personal relationship with a subordinate that was never timely and/or properly disclosed and/or addressed to resolve the actual conflict of interest it presented in the NBC10-Boston newsroom.

59. Unlike plaintiff, the assistant news director's personal relationship posed an actual conflict of interest and impacted the employment of other employees at NBC10-Boston whom the assistant supervised.

60. Unlike the assistant news director, plaintiff did not seek to hide her personal relationship, yet was nonetheless terminated for maintaining a personal relationship with a non-employee – a Police Chief of a community approximately 50 miles from Boston.

61. Upon information and belief and published media reports, other male employees of NBCU have faced no discipline or adverse employment action for failing to both internally and publicly disclose prior financial relationships in violation of defendants' conflict of interest policies.

62. Defendants' decision to terminate plaintiff's employment was in retaliation for her prior protected complaints about Ms. Doe's conduct. Defendants' decision to base the termination on plaintiff's alleged failure to disclose her personal relationship with a local Police Chief was entirely pretextual in violation of M.G.L. c. 151B, § 4(4) and 42 U.S.C. § 2000e-3.

63. In terminating plaintiff but choosing to take no adverse employment action as to similarly-situated male employees, defendants subjected plaintiff to a hostile work environment and disparately treated and discriminated against her on the basis of gender. Defendants' decision to terminate plaintiff's employment constitutes gender discrimination under M.G.L. c. 151B § 4(1) and 42 U.S.C. § 2000e-2(a).

## COUNT I
(Sexual Harassment – M.G.L. c. 151B, § 4(16A))
(All Defendants)

64. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 – 63 above.

65. Plaintiff was subjected to unwelcome sexual harassment in the workplace based upon her gender. Such harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and/or create an abusive working environment. The sexually objectionable conduct was both objectively and subjectively offensive such that a reasonable person in plaintiff's position would find it hostile or abusive and plaintiff, in fact, perceived it to be so. Defendants were aware of such unwelcome sexual harassment yet failed to take appropriate steps or measures to either investigate or address it.

66. As a direct and proximate result of such sexual harassment, plaintiff suffered injuries and damages, including, but not limited to, lost wages and benefits, damage to her personal and professional reputation, and significant emotional distress. Plaintiff also incurred legal fees and costs.

WHEREFORE, plaintiff seeks an award of compensatory damages, costs and attorneys' fees as against all defendants.

## COUNT II
(Gender Discrimination – M.G.L. c. 151B, § 4(1))
(All Defendants)

67. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 – 66 above.

68. Plaintiff was, at all times, performing her job as an investigative reporter at an acceptable level. Defendants subjected plaintiff to an adverse employment action – *i.e.*, termination – based on her alleged failure to formally disclose a potential conflict of interest in violation of company policies. In so doing, plaintiff was a victim of disparate treatment based on gender in that male employees who likewise failed to formally disclose potential conflicts of interest in violation of company policies were not terminated or otherwise disciplined.

69. As a direct and proximate result of such gender discrimination, plaintiff suffered injuries and damages, including, but not limited to, lost wages and benefits, damage to her personal and professional reputation, and significant emotional distress. Plaintiff has also incurred legal fees and costs.

WHEREFORE, plaintiff seeks an award of compensatory damages, costs and attorneys' fees as against all defendants.

## COUNT III
(Retaliation – M.G.L. c. 151B, § 4(4))
(All Defendants)

70. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 – 69 above.

71. Plaintiff engaged in activity protected by Chapter 151B by opposing unlawful employment practices in the workplace. Because she engaged in such activity, defendants subjected plaintiff to an adverse employment action – *i.e.*, termination.

72. As a direct and proximate result of such retaliation, plaintiff suffered injuries and damages, including, but not limited to, lost wages and benefits, damage to her personal and professional reputation, and significant emotional distress. Plaintiff has also incurred legal fees and costs.

WHEREFORE, plaintiff seeks an award of compensatory damages, costs and attorneys' fees as against all defendants.

## COUNT IV
(Sexual Harassment – 42 U.S.C. § 2000e-2 (Title VII))
(All Defendants)

73. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 – 72 above.

74. Plaintiff was subjected to unwelcome sexual harassment in the workplace based upon her gender. Such harassment was sufficiently severe or pervasive so as to alter the conditions

of plaintiff's employment and/or create an abusive working environment. The sexually objectionable conduct was both objectively and subjectively offensive such that a reasonable person in plaintiff's position would find it hostile or abusive and plaintiff, in fact, perceived it to be so. Defendants were aware of such unwelcome sexual harassment yet failed to take appropriate steps or measures to either investigate or address it.

75. As a direct and proximate result of such sexual harassment, plaintiff suffered injuries and damages, including, but not limited to, lost wages and benefits, damage to her personal and professional reputation, and significant emotional distress. Plaintiff also incurred legal fees and costs.

WHEREFORE, plaintiff seeks an award of compensatory damages, costs and attorneys' fees as against all defendants.

## COUNT V
(Gender Discrimination – 42 U.S.C. § 2000e-2 (Title VII))
(All Defendants)

76. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 – 75 above.

77. Plaintiff was, at all times, performing her job as an investigative reporter at an acceptable level. Defendants subjected plaintiff to an adverse employment action – *i.e.*, termination – based on her alleged failure to formally disclose a potential conflict of interest in violation of company policies. In so doing, plaintiff was a victim of disparate treatment based on gender in that male employees who likewise failed to formally disclose potential conflicts of interest in violation of company policies were not terminated or otherwise disciplined.

78. As a direct and proximate result of such gender discrimination, plaintiff suffered injuries and damages, including, but not limited to, lost wages and benefits, damage to her personal and professional reputation, and significant emotional distress. Plaintiff has also incurred legal fees and costs.

WHEREFORE, plaintiff seeks an award of compensatory damages, costs and attorneys' fees as against all defendants.

## COUNT VI
(Retaliation – 42 U.S.C. § 2000e-3 (Title VII))
(All Defendants)

79. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 – 78 above.

80. Plaintiff engaged in activity protected by Title VII by opposing unlawful employment practices in the workplace. Because she engaged in such activity, defendants subjected plaintiff to an adverse employment action – *i.e.*, termination.

81. As a direct and proximate result of such retaliation, plaintiff suffered injuries and damages, including, but not limited to, lost wages and benefits, damage to her personal and professional reputation, and significant emotional distress. Plaintiff has also incurred legal fees and costs.

WHEREFORE, plaintiff seeks an award of compensatory damages, costs and attorneys' fees as against all defendants.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims pled herein.

> The Plaintiff,
> KAREN HENSEL,
>
> By her attorneys,
> **PIERCE DAVIS & PERRITANO LLP**
>
> */s/ John J. Davis*
>
> John J. Davis, BBO No. 115890
> 10 Post Office Square, Suite 1100N
> Boston, MA 02109-4603
> (617) 350-0950
> jdavis@piercedavis.com

Dated:  November 10, 2022